THE HON. MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S&W FOREST PRODUCTS, LTD., a British Columbia corporation,<br><br>Plaintiff,<br><br>v.<br><br>CEDAR SHAKE & SHINGLE BUREAU, a Washington nonprofit corporation; WALDUN FOREST PRODUCTS LTD., a British Columbia corporation; and ANBROOK INDUSTRIES LTD., a British Columbia corporation,<br><br>Defendants. | CASE NO. 2:19-cv-000202<br><br>**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.     General Principles**

1.     An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and

contributes to the risk of sanctions.

2. The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.     ESI Disclosures**

Within 30 days after the Rule 26(f) conference, or at a later time if agreed to by the parties, each party shall disclose:

1. <u>Custodians.</u> The five custodians most likely to have discoverable ESI in their possession, custody or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under his/her control.

2. <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (e.g. third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.     Preservation of ESI**

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. With respect to preservation of ESI, the parties agree as follows:

1.       Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control.

2.       All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under (C)(3) or (D)(1)-(2) below).

3.       Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.
   b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
   c. On-line access data such as temporary internet files, history, cache, cookies, and the like.
   d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).
   e. Back-up data that are substantially duplicative of data that are more accessible elsewhere.
   f. Server, system or network logs.
   g. Data remaining from systems no longer in use that is unintelligible on the systems in use.
   h. Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

///

///

///

///

**D.      Privilege**

1.      With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

2.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

3.      Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced or (ii) the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production.

4.      Privilege Log Based on Metadata.  The parties agree that privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection).   For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title and date created.   Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure.

**E.      ESI Discovery Procedures**

1.      <u>On-site inspection of electronic media.</u> Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.      <u>Search methodology.</u> [*The Court presumes that in the majority of cases, the use of search terms will be reasonably necessary to locate or filter ESI likely to contain discoverable information.*] The parties shall timely attempt to reach agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, before any such effort is undertaken.

The parties shall continue to cooperate in revising the appropriateness of the search terms or computer- or technology-aided methodology.

In the absence of agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, the following procedures shall apply:

    a. A producing party shall disclose the search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information. The parties shall meet and confer to attempt to reach an agreement on the producing party's search terms and/or other methodology.

    b. If search terms or queries are used to locate ESI likely to contain discoverable information, a requesting party is entitled to no more than 5 additional terms or queries to be used in connection with further electronic searches absent a showing of good cause or agreement of the parties. The 5 additional terms or queries, if any, must be provided by the requesting party within 14 days of receipt of the producing party's production.

    c. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. Absent a showing of good cause, each search term or query returning more than 250 megabytes of data is presumed to be overbroad, excluding Microsoft PowerPoint files, image and audio files, and similarly large file types.

    d. The producing party shall search both non-custodial data sources and ESI maintained by the custodians identified above.

    3. <u>Format.</u> The parties agree that ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text

files),and searchable PDF. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database and drawing files, should be produced in native format.

4. <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party.

5. <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced: document type; custodian and duplicate custodians; author/from; recipient/to, cc and bcc; title/subject; file name and size; original file path; date and time created, sent, modified and/or received; and hash value.

## ADDITIONAL PROVISIONS FOR MORE COMPLEX CASES

In addition to the provisions set forth in the Model ESI Agreement above, parties may find the following provisions appropriate and useful in addressing more complicated ESI discovery issues. The complexity of ESI discovery varies from case to case and is not necessarily tied to the number or size of the parties or the amount in controversy. The additional provisions below are intended to assist parties in anticipating and addressing early on more complicated ESI discovery issues but may not be appropriate or necessary in every case. The following provisions are intended as suggested provisions from which parties may pick and choose, taking into consideration the needs of the particular case.

1. <u>Search methodology.</u>

Upon reasonable request and if appropriate for the particular case, a party shall also disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

AGREEMENT REGARDING ESI DISCOVERY- 6
CASE NO. 2:19-cv-00202

2. <u>Format.</u>

   a. Each document image file shall be named with a unique Bates Number (e.g. the unique Bates Number of the page of the document in question, followed by its file extension). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their information in the following format: single- page images and associated multi-page text files containing extracted text or with appropriate software load files containing all requisite information for use with the document management system (e.g., Concordance® or Summation®), as agreed to by the parties.

   b. If appropriate to the particular case, the parties shall consider whether or not the full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. If the parties so agree, the Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g. the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

   c. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

3. <u>Metadata fields.</u> The parties are to confer and agree on whether metadata is to be produced or may be excluded from discovery. Metadata may not be relevant to the issues presented or, if relevant, may not be reasonably subject to discovery, or may be subject to cost- shifting, considering the factors set forth in Fed. R. Civ. P. 26(b)(2)(C). For example, if one party is producing only paper documents, and the other party is producing ESI, the parties

should confer on whether the additional cost and burden of producing metadata by the party producing ESI is reasonable or should be shifted under the facts and circumstances of the case. If the parties agree to produce metadata, and unless otherwise agreed, each party shall produce the following metadata associated with ESI to the extent reasonably accessible: (a) the author(s) of the ESI; (b) the recipient(s) of the ESI; (c) the date the ESI was created; and (d) the source from which the ESI was produced. The "source" of ESI shall be the name of the person who was the custodian of the ESI or, if the name of a person is not available, the storage location (e.g., "Regulatory Shared Drive–Wayne, PA"). This information will be included in the "Author," "Recipient," "Date," and "Source" fields (respectively) for each document in the load file associated with the document images. Although it is presumed generally that the above list of metadata fields will be provided, the list of metadata fields is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor and business practices.

4. <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents shall include a cross-reference file that indicates document breaks and sets forth the Custodian or Source associated with each produced document. Hard-copy documents shall be scanned using Optical Character Recognition technology and searchable ASCII text files shall be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file shall be named with a unique Bates Number (e.g. the Unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

5. <u>Privilege Log Based on Metadata.</u> The parties agree that privilege logs shall be provided 30 days after the date agreed upon for final production in this matter.

**DATED:** May 22, 2019

HAGLUND KELLEY LLP

B*y: s/Michael E. Haglund*
Michael E. Haglund, OSB No. 772030
admitted *pro hac vice*
Michael K. Kelley, OSB No. 853782
admitted *pro hac vice*
Eric J. Brickenstein, OSB No. 142852
admitted *pro hac vice*
200 SW Market Street, Suite 1777
Portland, OR 97201
(503) 225-0777
(503) 225-1257 (fax)
mhaglund@hk-law.com
mkelley@hk-law.com
ebrickenstein@hk-law.com

JAMESON BABBITT STITES & LOMBARD
Bruce P. Babbitt, WSBA No. 4830
801 2nd Avenue, Suite 700
Seattle, WA 98104-1515
 (206) 292-1994
(206) 292-1995 (fax)
bbabbitt@jbsl.com
LOCAL COUNSEL
*Attorneys for Plaintiff*

**LANE POWELL PC**

By: *s/Larry S. Gangnes*
  Larry S. Gangnes, WSBA No. 08118
  gangnesl@lanepowell.com
  Heidi B. Bradley, WSBA No. 35759
  bradleyh@lanepowell.com
  Jessica N. Walder, WSBA No. 47676
  walderj@lanepowell.com
  Joseph D. Adamson, WSBA No. 54752
  adamsonj@lanepowell.com
  1420 Fifth Avenue, Suite 4200
  Seattle, Washington 98111
Telephone: 206.223.7000
Facsimile: 206.223.7107
*Attorneys for Cedar Shake and Shingle Bureau*

**YARMUTH LLP**

By: *s/Molly A. Terwilliger*
Molly A. Terwilliger, WSBA No. 28449
Elizabeth S. Weinstein
1420 Fifth Avenue, Suite 1400
Seattle, WA 98101
Phone: 206.516.3800
Fax: 206.516.3888
Email: mterwilliger@yarmuth.com
*Attorneys for Anbrook Industries Ltd.*

**STOKES LAWRENCE, P.S.**

By: *s/Matthew L. Harrington*
Mathew L. Harrington, WSBA #33276
Stokes Lawrence, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
(206) 626-6000
Fax: (206) 464-1496
Email: mathew.harrington@stokeslaw.com
*Attorneys for Defendant Waldun Forest Products Ltd.*

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: _____June 7, 2019_____

_Marsha J. Pechman_ (signature)
Marsha J. Pechman
United States Senior District Judge