UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S&W FOREST PRODUCTS LTD, <br><br> Plaintiff, <br><br> v. <br><br> CEDAR SHAKE & SHINGLE BUREAU, et al., <br><br> Defendants. | CASE NO. C19-202 MJP <br><br> ORDER ON MOTIONS TO DISMISS |

The above entitled Court, having received and reviewed:

1. Defendants' Motions to Dismiss (Dkt. Nos. 87, 88, 89),

2. Plaintiff's Responses to Motions to Dismiss (Dkt. Nos. 94, 95),

3. Defendants' Replies in Support of Motions to Dismiss (Dkt. Nos. 97, 99, 100),

all supporting declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that Defendant Waldun Forest Products Ltd.'s FRCP 12(b)(2) motion is DENIED.

IT IS ORDERED that the FRCP 12(b)(6) motions to dismiss the Sherman Act claim against all Defendants are GRANTED.

IT IS FURTHER ORDERED that the motion to dismiss the breach of contract claim against Defendant Cedar Shake & Shingle Bureau is DENIED.

**Background[1]**

Defendant Cedar Shake & Shingle Bureau ("CSSB") is the only trade association serving the cedar shake and shingle industry. ¶ 19. The organization created, promotes and regulates its "Certi-Label"™ labeling program, a quality control rating which grades different varieties of shakes and shingles, and which Plaintiff alleges has become the standard in the "high-end" cedar shake and shingle market. ¶¶ 2, 3.

Co-Defendants Waldun Forest Products Ltd. ("Waldun") and Anbrook Industries Ltd. ("Anbrook") are two of the largest mills in the industry and Plaintiff alleges that they have led a consortium of the larger cedar shake and shingle member mills through a series of maneuvers within CSSB intended to consolidate their power, fix prices on their products, and eliminate bureau members attempting to price their products more competitively. ¶ 6. In a section of the FAC labeled "The CSSB/Waldun/Anbrook Conspiracy to Restrain Trade," Plaintiff alleges a series of "anticompetitive actions" which include reducing the number of Board members, defeating both term limits on CSSB directors and attempts to eliminate the weighted voting system which favors the higher-producing mills, and granting the Board chair (currently the president and CEO of Anbrook) the right to vote on all matters (instead of only voting to break ties). ¶ 28.

---

[1] All citations in this section are to the First Amended Complaint ("FAC") at Dkt. No. 68.

According to Plaintiff, this anti-competitive conspiracy culminated in the "recusal" of its representative from the Bureau's Board of Directors and the company's illegal termination from the CSSB on December 21, 2018, an action which Plaintiff alleges was undertaken under false pretenses and in violation of the Membership Agreement and the Bureau's bylaws. ¶¶ 29-41. That termination was preceded by a December 5, 2018 statement allegedly made by Curtis Walker (president and CEO of Waldun) to a third party that "CSSB member mills should hold their prices at consistent levels" and that "we just need to get rid of [the head of S&W]." ¶ 38.

Plaintiff has filed suit against all three Defendants for a violation of § 1 of the Sherman Act (a conspiracy in restraint of trade), and against Defendant CSSB for breach of contract related to its removal from the trade association. The complaint was originally filed on February 13, 2019 (Dkt. No. 1); Plaintiff later filed a First Amended Complaint ("FAC;" Dkt. No. 68) which is the subject of these dismissal motions. All three Defendants move for dismissal under FRCP 12(b)(6); co-Defendants Anbrook and Waldun have joined in CSSB's motion in addition to filing their own. Defendant Waldun also asserts a FRCP 12(b)(2) claim that this Court lacks personal jurisdiction over it.

**Discussion**

Standard of review

Under FRCP 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party. <u>Livid Holdings Ltd. v. Salomon Smith Barney, Inc.</u>, 416 F.3d 940, 946 (9th Cir. 2005). The Court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. <u>Wyler Summit P'ship v. Turner Broad. Sys.</u>, 135 F.3d 658, 661 (9th Cir. 1998).

1       Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Aschcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). As a result, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Timeliness

      Preliminarily, the Court must address Plaintiff's claim that neither of the motions to dismiss filed by Anbrook or Waldun are "timely." FRCP 15(a)(3) requires an answer or responsive pleading within 14 days of the filing of a complaint. In ruling on Plaintiff's earlier request for a preliminary injunction against CSSB, the Court extended the responsive deadline to 30 days from the date of the ruling (*see* Dkt. No. 62), a ruling which Plaintiff contends only pertained to CSSB. The motions to dismiss from co-Defendants Anbrook and Waldun were filed 20 days after the filing of Plaintiff's FAC and Plaintiff argues that the Court should strike the motions based on the six-day delay.

      The request is denied. Waldun and Anbrook maintain that they thought the extension applied to them as well; Plaintiff's only evidence to the contrary is a minute entry in the docket stating that "Defendant's [*singular*] answer or response to Plaintiff's complaint due 30 days following the issuance of this ruling." Id. The Court does not consider this definitive proof of Plaintiff's argument; it is neither a transcript of the Court's oral ruling nor a written order. A six-day filing delay, even if based on a misunderstanding, should not determine a substantive motion such as this.

FRCP 12(b)(2): Personal jurisdiction (Waldun only)

Plaintiff makes no argument that there is general jurisdiction over Waldun; i.e., the company is neither incorporated in Washington nor has its principle place of business in the state.

Plaintiff does assert that the Court has specific jurisdiction over Waldun, however, an assertion which requires it to establish that:

1. Waldun "purposely directed activities" at the forum or availed itself of the privilege of conducting business here;
2. Its claim against Waldun "arises out of or relates to Defendant's forum-related activities;"
3. The exercise of jurisdiction "comports with fair play and substantial justice."

Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010).

Under the traditional test for specific jurisdiction, the Court finds that Plaintiff's complaint fails. In terms of "purposeful direction," the case law in the Ninth Circuit requires an intentional act, expressly aimed at the forum state, causing foreseeable harm in the forum. Marvix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011). First of all, as discussed in greater detail *infra* (*see* "FRCP 12(b)(6): Failure to state a claim"), Plaintiff has failed to successfully state a cause of action for a price-fixing conspiracy to restrain trade – much less a conspiracy "expressly aimed at the forum state" – so it is moot whether Waldun's alleged "intentional price-fixing acts" were aimed at this forum.

Secondly, Plaintiff's argument that Waldun's membership in a Washington non-profit (CSSB is a non-profit organization registered in the State of Washington) is sufficient contact with this forum to justify the exercise of jurisdiction no longer represents the state of the law in this area. The contacts with the forum must be specifically related to complained-of activity in

order to establish specific jurisdiction (*see* Waite v. All Acquisition Corp., 901 F.3d 1307 (11th Cir. 2018)).

The Court has already mentioned (and will discuss in more detail *infra*) the insufficiency of the allegations of intentional acts of price-fixing. To the extent that the alleged intentional acts concern the "group boycott/wrongful termination" of S&W, jurisdiction is still lacking. Waldun is a British Columbia corporation, as are Anbrook and S&W – even if Plaintiff were able to allege facts adequate to establish that Waldun conspired with Anbrook to wrongfully terminate the company from the CSSB as a means of restraining S&W from conducting business (which it has not), there are no allegations that any of the activities related to that agreement took place in (or were aimed at) the forum state. Plaintiff does not even allege that the meeting at which it was terminated from the association took place in Washington. Traditional personal jurisdiction is lacking.

However, there is a statutory jurisdictional provision in the Sherman Act which permits service *worldwide* for Sherman Act claims. *See* 15 U.S.C. § 22 (§ 12 of the Sherman Act). Antitrust litigation employs a "national contacts" analysis for jurisdiction which simply requires minimum contacts with the U.S. sufficient to satisfy due process in order to find personal jurisdiction in any district. Action Embroidery Corp. v. Atlantic. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004).

Waldun attempts to evade jurisdiction on this basis by citing an 11th Circuit case which held that, unless service is made <u>under</u> the Sherman Act, jurisdiction cannot be established on the "national contacts" basis permitted under the statute. Gen. Cigar Holdings, Inc. v. Altadis, S.A., 205 F.Supp.2d 1335, 1340 (S.D.Fla. 2002); aff'd, 54 F.App'x 492 (11th Cir. 2002). Here,

Plaintiff served Waldun under the Hague Convention, not the Sherman Act, and Waldun argues that this disqualifies S&W from relying on a "national contacts" analysis.

This Court declines to adopt the 11th Circuit rule or Waldun's argument. No other jurisdiction besides the 11th has followed the rule (it has only even been cited once since 2002). Plaintiff's claims against Waldun are made under the Sherman Act, which authorizes nationwide service of process; the Court fails to see how (in terms of either fundamental fairness or due process) it makes any difference whether the service is actually made "<u>under</u>" the Sherman Act. The statute reads

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and <u>all process</u> in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C.S. § 22 (emphasis supplied). "All process… may be served" as long as the suit is "under the antitrust laws;" the provision says nothing about "only service made under this statute." Plaintiff adequately asserts the requisite transaction of business throughout the U.S. by Waldun in its complaint (*see* FAC at ¶ 15), and the Court is satisfied that personal jurisdiction over the Defendant exists under a "national contacts" analysis.

FRCP 12(b)(6): Failure to state a claim

*First Claim: Sherman Act § 1 violation*

Successfully pleading a violation of § 1 of the Sherman Act (15 U.S.C. *et seq.*) requires three elements:

1. A contract, combination or conspiracy for the purpose of
2. "Unreasonably" restraining trade
3. Which affects interstate commerce.

T.W. Electrical Service, Inc. v. Pac. Electrical Contractors Assoc'n, 809 F.2d 626, 632-33 (9th Cir. 1987).

The fatal flaw in Plaintiff's pleadings is its inability to state facts which are either (1) sufficient to allege a conspiracy or (2) sufficient to establish a *per se* conspiracy.

The Ninth Circuit has held that

> …to allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a "specific time, place, or person involved in the alleged conspiracies" to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin.

Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008)(*quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1970 at n.10).

Plaintiff's FAC is deficient in this regard. The vast majority of its allegations (particularly ¶ 28 which contains its lengthy laundry list of "anticompetitive acts") consist of simply appending the conclusory phrase "conspiring to" to a list of actions taken by Anbrook, Waldun, or CSSB which S&W alleges were undertaken to diminish the power of (or eliminate) "competitor member mills." ¶ 28 of the FAC contains no allegation describing a "time, place or person involved in the alleged conspiracies." It is textbook conclusory pleading and it cannot suffice to successfully allege the conspiracy required by § 1 of the Sherman Act.

Plaintiff's pleading regarding the "conspiracy to terminate" it from the Bureau is similarly vague and generic. Plaintiff alleges:

> Prior to the vote to terminate S&W, defendant Waldun through Curtis Walker and defendant Anbrook through Board chairperson Brooke Meeker conspired with one or more other CSSB directors to present false and defamatory information to the CSSB Board… and to exclude Intertek chief inspector Wayne Rourke from participating in that meeting.

> In furtherance of their conspiracy to terminate S&W as a CSSB member mill, defendants Waldun and Anbrook through their chief executives colluded with other members of the CSSB Board of Directors to deny S&W any notice of the charges against it or opportunity to defend itself… [and] these co-conspirators directed CSSB Executive Director Lynn Christensen to issue a Notice of Recusal to S&W Sales Manager Sanjna Hothi…

Id. at ¶¶ 39, 40. No facts are plead regarding when or where Waldun and Anbrook met to plot this agreement, what was discussed, or who the "one or more other CSSB directors" might be. This is exactly the kind of conclusory pleading which Twombly and Iqbal were intended to prevent.

The one specific "time, place and person" instance which Plaintiff does plead is the December 5, 2018 conversation between Waldun's president and CEO Curtis Walker and a member of the Watkins Sawmill. The specific facts alleged here are:

> Curtis Walker stated that CSSB member mills should hold their prices at consistent levels. He expressed anger about S&W's willingness to compete on price for shake and shingle products. He became very agitated during his comments about S&W and stated: "yeah, well we just need to get rid of [the head of S&W]."

FAC at ¶ 38. This is simply a report of one man talking, and inadequate for purposes of pleading a conspiracy. A conspiracy by definition must consist of two or more people. There is no allegation that Walker solicited the other party to the conversation to "hold their prices at consistent levels" or "get rid of" S&W, and no allegation that Walker had similar conversations (much less an agreement) with anyone else.

Alternatively, Plaintiff argues that CSSB is a "presumptive conspiracy" and that its actions are *per se* anticompetitive. A finding that Plaintiff has plead a *per se* Sherman Act violation would relieve it of the obligation to allege adequate facts to establish a conspiracy. The

default inquiry into antitrust allegations follows a "rule of reason" analysis; i.e., did the action(s) impose an "unreasonable restraint" on trade? *See* Standard Oil Co. v. United States, 221 U.S. 1 (1911). However, "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm… or the business excuse for their use" are considered "*per se*" anticompetitive. Northern Pacific R. Co. v. United States, 356 U.S. 1, 5 (1958).

> The decision to apply the *per se* rule turns on "whether the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output . . . or instead one designed to 'increase economic efficiency and render markets more, rather than less, competitive.'" Broadcast Music, Inc. *v.* Columbia Broadcasting System, Inc., 441 U.S. 1, 19-20 (1979) (citations omitted). See also National Collegiate Athletic Assn. *v.* Board of Regents of University of Oklahoma, 468 U.S. 85, 103-104 (1984) (*"Per se* rules are invoked when surrounding circumstances make the likelihood of anticompetitive conduct so great as to render unjustified further examination of the challenged conduct").

Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co., 472 U.S. 284, 289-90 (1985).[2]

Plaintiff has two theories to advance in support of its argument that CSSB's actions were facially restrictive of competition. The first is that that the Defendants were engaged in a conspiracy to fix prices. The problem with this theory is that, outside of Walker's isolated comment, there are no facts alleged which support this allegation. Plaintiff asserts that every "anticompetitive act" it complains of (*see* FAC at ¶ 28) was in service of a plan to fix prices, but

---

[2] The Supreme Court in Nw. Wholesale went on to say that "[w]hen the plaintiff challenges expulsion from a joint buying cooperative, some showing must be made that the cooperative possesses market power or unique access to a business element necessary for effective competition." Id. at 298. Both parties devote considerable briefing to whether Plaintiff has adequately plead a "relevant market" for Sherman Act purposes. The Court declines to reach that issue in light of the ruling that Plaintiff has failed to plead sufficient facts related to its allegations of a conspiracy in restraint of trade to entitle it to relief.

there is no evidence adduced that such a plan actually existed; e.g., facts related to the time, place or content of any meetings between "co-conspirators," nor any sales/market statistics tending to establish that prices were being maintained at artificially high levels.

Plaintiff argues that it is not required to prove "naked price-fixing;" that its "detailed price-fixing allegations (including Curtis Walker's admissions)" provide "relevant context" and "strongly suggest that terminating S&W was part of a broader anticompetitive strategy." Dkt. No. 94, Response to CSSB Mtn at 10. But the problem is that, outside of Walker's statement (which, standing alone, is at best proof of Walker's opinion on the subject, not proof of price-fixing) nothing is alleged which makes the allegation of price-fixing plausible.

The other legal ground on which Plaintiff seeks to prove out its "*per se* anticompetitive" theory is its termination from CSSB, which it attempts to paint in an antitrust light as a "group boycott." While the Court finds that Plaintiff has adequately plead that there were improprieties in the process by which it was terminated (*see* "Second Claim: Breach of Contract" analysis *infra)*, that is not the same thing as properly alleging an anticompetitive act, particularly a *per se* anticompetitive act. Plaintiff's desire to plausibly imply that the termination was motivated by its refusal to "get on board" the price-fixing train is severely undercut by its inability to produce any evidence (besides the ineffectual Walker quote) that a price-fixing conspiracy existed.

This approach is further undercut by the undisputed fact that CSSB did have the right, under the Agreement, to terminate members under certain circumstances. Plaintiff alleges that its termination was procedurally improper and based on false pretenses; CSSB asserts that it was simply fulfilling its mandate to protect the industry and the public from shoddy and/or deceptive practices and improper use of its valuable Certi-Label™ process. While this litigation is not at a point where the Court is required to ascertain who has the more meritorious position, the fact that

there is a potentially legitimate business motive for CSSB's actions is sufficient to defeat

Plaintiff's Sherman Act claim even at this early stage.

> Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws. Bell Atlantic, 127 S. Ct. at 1964-66 & n.5 (explaining that an antitrust complaint must cross the threshold not only between "conclusory and factual" but also between "the factually neutral and the factually suggestive").

Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1049 (9th Cir. 2008).

The bottom line is that properly pleading a *per se* Sherman Act violation presents a high bar, as the Supreme Court has explained:

> Resort to *per se* rules is confined to restraints, like those mentioned, "that would always or almost always tend to restrict competition and decrease output." [*citation omitted*] **To justify a *per se* prohibition a restraint must have "manifestly anticompetitive" effects,** GTE Sylvania, *supra,* at 50, 97 S. Ct. 2549, 53 L. Ed. 2d 568, **and "lack . . . any redeeming virtue,"** Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co., 472 U.S. 284, 289, 105 S. Ct. 2613, 86 L. Ed. 2d 202 (1985) (internal quotation marks omitted).
>
> As a consequence, **the *per se* rule is appropriate only after courts have had considerable experience with the type of restraint at issue**, [*citation omitted*] **and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason**. [*citation omitted*] It should come as no surprise, then, that "we have expressed reluctance to adopt *per se* rules with regard to restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious." [*citation omitted*]

Leegin Creative Leather Prods. v. PSKS, Inc., 551 U.S. 877, 885-86, 886-87 (2007)(emphasis supplied). None of the factors mentioned above is present here – the acts alleged are not "manifestly uncompetitive," this Court has not had "considerable experience with the type of

restraint at issue" (nor has Plaintiff cited to cases addressing similar situations), and the economic impact of the actions of which Plaintiff complains are "not immediately obvious."

Plaintiff has failed to adequately plead a *per se* Sherman Act violation, which means it must rely on a "rule of reason" analysis to support its allegations. The requirements of successfully meeting the "rule of reason" test return Plaintiff to the necessity of establishing the "conspiracy/combination/contract" element cited *supra*, a requirement which its FAC fails to meet.

On this basis, the Court will GRANT the Defendants' motion to dismiss as regards the first cause of action in Plaintiff's FAC.

*Second Claim: Breach of Contract*

Defendant CSSB seeks dismissal of this cause of action on the grounds that the FAC is devoid of any allegations of a *specific* breach; i.e., which provisions of their contract were violated. But, as Plaintiff points out, the Agreement incorporates the organization's bylaws, and this Court has already found that Plaintiff has adequately alleged that (1) the notice provision of the bylaws was violated by the "non-noticed" termination meeting, and (2) the "recusal" of Plaintiff's representative from the Board was an *ultra vires* act not sanctioned by the bylaws. Dkt. No. 65, Order Granting Preliminary Injunction at 5-7.

Furthermore, the bylaws require that termination of membership be "for cause;" either a

> failure to comply with [the] Bylaws,… its Member Agreement, or any of the policies, procedures, rules and regulations adopted by resolution of the CSSB Members or the Board of Directors… or for conduct detrimental to CSSB or its Members.

FAC at ¶ 54. By Plaintiff's allegations, the termination was made under false pretenses and thus was not "for cause" – clearly a violation of Defendant's contractual agreement with its members.

Defendant CSSB also seeks dismissal of this claim on the basis of a "limitation of liability" provision in the Agreement which states:

> <u>Limited Liability for [CSSB]</u>.  [CSSB] shall not be liable for special, incidental, indirect or consequential damages of any kind whatsoever, whether alleged to have resulted, directly or indirectly, from a breach by [CSSB] of this Agreement o[r] other contract, negligence, or other tort or otherwise.

Dkt. No. 11-2, Agreement, ¶ 13.

Not surprisingly, Plaintiff indicates that it intends to challenge this aspect of its membership contract as unconscionable when raised as a defense in CSSB's answer.  Defendant argues that the determination of the validity of this clause is purely a matter of law, but if it intends to imply that the Court should resolve the issue at this stage of the proceedings, the Court disagrees and declines to do so.

The motion to dismiss the breach of contract claim is DENIED.

## **Conclusion**

Plaintiff has established personal jurisdiction over Defendant Waldun Industries, Ltd. based on a "national contacts" analysis, as it is permitted to do on the basis of its Sherman Act claim.  Plaintiff has alleged sufficient facts to state a plausible claim for relief on its breach of contact action against Defendant CSSB.

However, Plaintiff has failed to allege sufficient facts to plausibly claim relief under the Sherman Act against the named Defendants, and that claim will be dismissed pursuant to FRCP 12(b)(6).

The clerk is ordered to provide copies of this order to all counsel.

Dated August 7, 2019.

*[signature]*

Marsha J. Pechman
United States Senior District Judge